## IN THE COURT OF APPEALS OF IOWA

No. 18-1527
Filed February 5, 2020

**STATE OF IOWA,**
          Plaintiff-Appellee,

**vs.**

**JAMES H. EXLINE,**
          Defendant-Appellant.
_____

          Appeal from the Iowa District Court for Greene County, James M. Drew,
Judge.

          James H. Exline appeals his convictions of second- and third-degree sexual
abuse.  **AFFIRMED.**

          Travis M. Armbrust of Brown, Kinsey, Funkhouser & Lander, P.L.C., Mason
City, for appellant.

          Thomas J. Miller, Attorney General, and Darrel Mullins and Denise
Timmins, Assistant Attorneys General, for appellee.

          Heard by Vaitheswaran, P.J., and Doyle and May, JJ.

**VAITHESWARAN, Presiding Judge.**

James H. Exline was twice tried for second- and third-degree sexual abuse of a child, with the first trial ending in a mistrial and the second resulting in jury findings of guilt. On appeal, Exline argues the district court (1) abused its discretion in allowing the jury to hear that the child died; (2) erred in admitting hearsay evidence; and (3) abused its discretion in denying his motion to postpone the second trial.

## I.     *Death of Child*

The child Exline was charged with abusing died before the State filed charges. Prior to the first trial, Exline filed a motion in limine seeking to exclude "[e]vidence and testimony pertaining to the unavailability of [the child] including but not limited to the death of [the child] . . . or any of the surrounding circumstances of her death." At a hearing on the motion, he argued the fact and cause of her death were irrelevant and should be excluded. The State objected on the ground that, if the death were not disclosed, the jury would speculate as to why the State failed to call the child as a witness. The district court ruled the State could elicit the fact of the child's death but not the cause.

During the first trial, a witness mentioned the cause of the child's death. The district court declared a mistrial. Before the second trial, Exline moved to exclude the witness. The district court denied the motion and entrusted the prosecutor with the obligation "to deal with [the witness] and make sure that she [was] instructed" not to testify about the cause of death. At trial, the prosecutor asked the witness to simply answer "yes" or "no" to the question of whether the child died. The witness answered "yes."

On appeal, Exline argues "allowing the jury to know that the alleged victim was deceased without telling them how that happened or smoothing over the reason resulted in an unfair trial." His argument is inconsistent with the position he took in the district court. The court questioned defense counsel about whether the cause of the child's death should be disclosed if the fact of her death was disclosed. Counsel responded, "I would prefer that no explanation be given, only that she's deceased." The court accepted his position.

Exline "cannot now predicate error upon the court's doing the very thing [he] requested the court to do." *State v. Beckwith*, 53 N.W.2d 867, 869 (Iowa 1952); *see also Kinseth v. Weil-McLain*, 913 N.W.2d 55, 74 (Iowa 2018) (stating a party with knowledge of facts who assumes a particular position in a judicial proceeding is estopped from assuming an inconsistent position, be it in the same or different proceedings, as long as the court accepts the position). We conclude Exline is judicially estopped from challenging the district court's ruling.

This is particularly true "in the absence of any showing of prejudice." *Beckwith*, 53 N.W.2d at 869; *State v. Deering*, No. 14-1656, 2016 WL 1358491, at *5–6 (Iowa Ct. App. Apr. 6, 2016). As noted, the prosecutor did not delve into the cause of the child's death. In closing argument, Exline's attorney used the fact of her death to his advantage. After noting the child "never made any statements under oath . . . subject to cross-examination," he went on to impugn the child's credibility and the credibility of witnesses who recounted her statements. Exline made the most of the child's absence without having to address what he conceded was complicated causation evidence. He failed to establish he was prejudiced by the disclosure of the child's death.

Even if the doctrine of judicial estoppel did not apply and we were to reach the merits of the court's evidentiary ruling, we would discern no abuse of discretion in the ruling. *See State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014) (reviewing evidentiary rulings other than hearsay rulings for an abuse of discretion). The court considered the State's asserted need for the testimony and Exline's objection and limited the testimony in accordance with Exline's request.

## II.    *Hearsay Evidence*

The State planned to call a nurse as well as the child's grandmother, friend, and sister to testify to statements the child made. Aware of their impending testimony, Exline sought to exclude the child's statements on the ground they were "hearsay" and violated "the due process clause of the Fifth Amendment of the United States Constitution, article I, section 9 of the Iowa Constitution, the confrontation clause of the Sixth Amendment of the United States Constitution, [and] article I, section 10 of the Iowa Constitution." The district court preliminarily admitted some of the statements and later overruled trial objections to certain witnesses' testimony.

On appeal, Exline reprises his assertion that the statements were "straight hearsay . . . which the fact finder should not have heard as, not only are they inadmissible, but they violated [his] State and Federal Constitutional rights to confront the witnesses against him."[1] Our review of the court's rulings is for errors of law. *State v. Walker*, 935 N.W.2d 874, 878 (Iowa 2019).

---

[1] Exline also raises a hearsay challenge to the testimony of a forensic interviewer. Following his attorney's trial objections, the prosecutor did not elicit hearsay testimony from the witness. Accordingly, we need not address the testimony.

We begin with the nurse who examined the child following a disclosure of possible abuse. The district court preliminarily ruled statements the child made to the nurse were admissible under the exception to the hearsay rule for medical diagnosis or treatment. Exline's attorney voiced a trial objection on the ground the statements were "hearsay, [violated the] confrontation [clauses] under the United States and Iowa Constitutions, right to a fair trial under the United States and Iowa due process clause, and [were] a privileged communication." The district court summarily overruled the objection. The nurse testified to the sex acts performed on the child, as recounted by the child. She also identified Exline as the perpetrator, again as recounted by the child.

The child's statements to the nurse were indisputably hearsay evidence. *See* Iowa R. Evid. 5.801(c)(1), (2) (stating hearsay is a statement "[t]he declarant does not make while testifying at the current trial or hearing" that is offered "into evidence to prove the truth of the matter asserted in the statement"). Generally, hearsay is inadmissible. *See* Iowa R. Evid. 5.802. But, as the district court noted, there are exceptions, including one for medical diagnosis or treatment. *See* Iowa R. Evid. 5.803(4) (granting an exception for a statement that is "made for—and is reasonably pertinent to—medical diagnosis or treatment" and "[d]escribes medical history, past or present symptoms or sensations, or the inception or general cause of symptoms or sensations").

Exline essentially concedes the child's description of the sex acts performed on her fell within the diagnosis-or-treatment exception. He focuses on the admission of statements identifying him as the abuser.

The Iowa Supreme Court recently addressed identity statements made by a child to a physician. *See Walker*, 935 N.W.2d at 879–80. Applying the two-part test set forth in *State v. Tracy*, 482 N.W.2d 675, 681 (Iowa 1992), the court held "there was sufficient evidence to establish [the child's] 'motive in making the statement[s] [was] consistent with the purposes of promoting treatment'" and "the State established [the child's] statements were of a type that are 'reasonably relied on by a physician in treatment or diagnosis.'" *Id.* at 879 (quoting *Tracy*, 482 N.W.2d at 681) (alteration in original). The court affirmed the admission of the statements for identity purposes. *Id.* at 880; *see also State v. Smith*, 876 N.W.2d 180, 186 (Iowa 2016) ("When the 'alleged abuser is a member of the victim's immediate household, statements regarding the abuser's identity are reasonably relied on by a physician in treatment or diagnosis.'" (quoting *Tracy*, 482 N.W.2d at 681)).

In this case, the State similarly established that the child's motive in making the statements to the nurse was consistent with the purpose of promoting treatment and the statements were of a type reasonably relied on by a health care provider in treatment or diagnosis. *See Walker*, 935 N.W.2d at 879–80. The nurse testified she would want to know who, if anyone, abused the child, because "as an advocate for their health and their well-being, [she] would want to ensure that a child's not going back to an environment in which they could continue to be hurt." *See Smith*, 876 N.W.2d at 186 ("The doctor is also often concerned about the possibility of recurrent abuse."). The nurse explained she would need to know what if any acts were performed on the child to "help[] guide the exam," and she stated "it's good information to know which parts of the body . . . could have been affected . . . to make relevant recommendations for further care or treatment or

referrals." She explained the purpose of the visit to the child using language the child employed, stating "first and foremost" she wanted "to make sure" they were "on the same page." She also highlighted the importance of not putting "words or thoughts . . . into [the child's] head." *See Walker*, 935 N.W.2d at 880 (noting physician used "age-appropriate terms" in explaining purpose of the visit). After explaining her protocol, the nurse recounted the sex acts, in the child's words. Based on the acts described by the child, she collected specimens "to evaluate for sexually transmitted infections" and ran tests on the specimens.

We conclude the district court did not err in finding the child's identification of Exline admissible under the medical-diagnosis-or-treatment exception to the hearsay rule. As for the confrontation clause challenge to the statements, Exline conceded at trial that the Iowa Supreme Court resolved the issue to his detriment. *See In re J.C.*, 877 N.W.2d 447, 456, 458 (Iowa 2016) ("[W]e do not believe admission of [a physician's] testimony and report [containing out-of-court-statements of a child] violated [a delinquent's] rights of confrontation under the Sixth Amendment [or article I, section 10 of the Iowa Constitution].").

With the child's description of the sex acts and perpetrator properly admitted through the nurse under the medical diagnosis-and-treatment exception, the child's similar statements to her grandmother and friend were cumulative. *See State v. Neitzel*, 801 N.W.2d 612, 623 (Iowa Ct. App. 2011). Accordingly, we need not address the State's assertion that the disclosures to those individuals were admissible under the excited-utterance or residual-hearsay exceptions to the hearsay rule.

We are left with the child's statements to her sister. The sister testified without objection that the child told her Exline was "saying dirty things to [her]."[2] On cross-examination, Exline's attorney elicited an admission that the child "never told her that [Exline] was doing anything to her." But counsel did not object to the following exchange between the prosecutor and the sister: "Q. You're aware that . . . [the child] did disclose to your grandma and the police that your dad had been sexually abusing her; correct? A. Yes." This exchange was admissible. The testimony bolsters the identity statements the child made to the nurse.

In sum, we conclude the admission of hearsay testimony does not require reversal and remand for a new trial.

### III.  *Denial of Motion for Continuance*

Exline had the same attorney in the first and second trials. Three days before the second trial was scheduled to begin, Exline's attorney moved for a continuance. The district court denied the motion. The court reasoned that the situation was "of Mr. Exline's making" when he "decided to accept a plea offer" and "rejected it" at the eleventh hour.

On appeal, Exline argues the district court abused its discretion in denying the motion. *See State v. Clark*, 814 N.W.2d 551, 560 (Iowa 2012) ("We generally review a district court's denial of a motion for continuance for an abuse of discretion."). We disagree.

---

[2] Prior to the first trial, Exline argued the sister's testimony about what Exline said to the child was irrelevant. The district court overruled the objection and left a hearsay objection in abeyance. That objection was not revisited during the second trial.

Exline's attorney acknowledged he was "prepared for the trial in general" but stated he did not have "sufficient time" to prepare for jury selection. He asserted he "stopped doing preparation concerning the jury" after "an agreement to resolve the case" materialized. He cited the public defender's practice of declining to pay court-appointed attorneys for trial preparation under those circumstances. In particular, he stated he did not have his investigator pursue leads that would have aided in jury selection. Counsel did not explain the nature of those leads and how they would assist in jury selection other than to indicate they required searches of public records and related to a witness who was deposed a week earlier. Nor did he explain why his previous experience selecting a jury in the same case would not inform his selection of a second jury.

We conclude the district court did not abuse its discretion in denying Exline's belated motion to continue trial.

We affirm Exline's judgment and sentence.

**AFFIRMED.**